The Chis? Justice
delivered the opinion.
This was aa action of debt brought by the bank of Keu-tucky jointly against Noble as the maker and Fowler as the endorser of a protnisory note, negotiable and payable at the Lexington branch bank, and discounted by the bank for the benefit of Noble. The cause was tried on the general issue, and the plaintiff having produced in evidence, the note with the endorsement, thereon, and the protest for non-, payment, bearing date the last day of grace, and having proved that notice of the protest was on the morning of the next day given to Fowler, who lived in Lexington, the defendants moved the court to instruct the jury, that the proof *263 was insufficient to authorise a verdict against Fowler. Rut the court refused to give the instruction, to which .the defendants excepted, and a verdict and judgment were rendered against both defendants, to which they prosecute this writ of error.
^ T^,e. prosecute her by adór-nev; & w“e-torriey^has**" sufficient authority can-"one'íbsPtbe deft,
p-otiated in * bank, theob- %or an<* as” bes'ued joinf-for die noye ranks as aiore'Sn 1,11,1
The points made by the assignment of error, are, 1st, that %e suit was improperly prosecuted by the bank in proper person, when it should have been prosecuted by special attorney; 2, that the action should not have been joint; and 3, that the circuit court ought to have instructed the jury as asked by the defendants in that court.
The first point is hypothecated upon the presumption of a fact which is physically and legally impossible in itself, and contrary to the plain import of thy record. The bank, as an aggregate corporation, has no visible or tangible ex isten'ce, and could not by any possibility, appeal? and ente a suit in person, and the record explicitly shews, that this suit was prosecuted by attorney. Whether the attor nev, who prosecuted the suit in the name of the bank, had ■sufficient authority for so doing, certainly cannot be a sub-for in this court for the first time.
With respect to the second point made by the assign - ment of error, it is sufficient to remark, that the act concerning bills of exchange, 2 Lifteil, 101, authorises a joint action of debt against the drawer and endorser of a foreign protested bill of exchange, and by the act incorporating the bank of Kentucky, notes which are made negotiable and payable at the bank or its branches, ami discounted by the ba 'k, are placed upon the same footing with foreign bills oi exchange, so that the same remedy’ may be bad thereon,
Tbe third point is clmfli relied on, and to -that -the gummis of the counsel on bot h sides have been principally directed. The sole question made in the argument, is, Whether t he notice of the protest for non payment is sufficient to charge the defendant howler, as endorser. On the one side it is contended, as the parlies lived in the same place, that the notice ought to have been’given on the day on which the note was protested; while on the other, it is urged that notice on the next day was ail that the law requires.
It is conceded on all hands, that notice was indispensably necessary, arid the rule is incontrovertably established, that >i •• notice to be sufficient, must be given in reasonable *¡tae» With regard to what should be considered reason *264 able time within which notice should be given, there Is no-*hing to be found satisfactorily settled in the English books anterior to the American revolution; and the reason is obvi-for, prior to that time, it was thought to be a matter of foct, when the jury were permitted io decide on the par-tienlnr circumstances of each individual casa. About that . . - . , period, however, it become a point ot controversy, whether the reasonableness of the time in which notice should be §'ven> lV8Sa question of fact, within the province of the to decide, ora question of law to which the court was to respond, and the courts of t hat country have since determined, and no doubt correctly, that it was a question of I"v- But the use op English post revolutionary cases in the courts of this country, having been proscribed by the legislature, we can avail ourselves of the light those cases have shed upon the point now in controversy, only through the medium of the elementary treatises upon the subject, Most of the treatises of tiiis character, however, with which we are acquainted, were written so recently after it was settled, that the reasonableness of the lime in which notice should be given, was a matter of law; that the question ma(jc this case, had not been decided. Kidd, in his treatise on bills, lays down no rule decisively. He seems to think, iiowevcr, that notice roust he given as soon as, under all the circumstances of the case, it is possible so to do, and he refers to a case in which he says, the court held that notice to the endorser, ought to have been given on the same day on which the bill was dishonoured.
Not'ce protest *o the ewdorser is lndupensa-b:e, &s 'outd begiven with dis*a”ch-— ■whi^t is smuiblnf matter of law, cTcumsun'-'1 ces, bat does not me*n he AsTdUpítch] nor is the hoi-der obliged tPher^avaca. tions to watch 'he &teof a bill.
Chilly, ⅛ the first and some subsequent editions of his treatise upon bills, lays down the doctrine in the same way, and refers, in support of it, to the same case. But it is evident these writers were mistaken in the import and effect of the decision of the court in the case to which they refer, and that the inference they attempt to deduce from it, is not justified by it, for the case, as abridged by Kidd, shews that the note was dishonoured on the fifth of October, that being the first day of grace, and that notice was not given to the endorser until the seventh. 'S he same case is referred to by Seiwyn in his Nisi Prius, I vol. 309, and the inference he makes from it, is directly the reverse of that deduced by Kidd and Cbitty; for he says “the general rule •‘to be collected from that case, seems to be with respect “to persons living in the same tewn, that the notice shall “be.given bv the nest day.” But the truth is, that neither *265 inference is justified by the case; for the notice not having been given on the next day after the dishonour of the note, the point of the sufficiency of the notice on that day co'uld not have occurred, and the decision of it by the court would have been extrajudicial.
But in.a late edition of Chitty’s work m England, which has been republished in America, cases are referred to, in which the point now in controversy did occur, and was directly decided; and it is laid down as an established rule, that, where the parties live in the same town, each party has an entire day after that on which he was informed of the dishonor of the bill, to give notice to his immediate endorser — Chitty, American edition, 320 to 328. We do not suppose that this rule ought to be received here, merely because it is the established rule in England; but we apprehend the rule is intrinsically proper; and it is certainly no slight confirmation of its intrinsic propriety, that it has been sanctioned by the enlightened tribunals of the most commercial country in the world Between what is possible and what is reasonable, there is an evident distinction, and the law only requires nslice to be given in reasonable time.
The bolder of a bill of exchange, cannot be supposed to anticipate its dishonour, nor to provide for the event in his engagements for the day, and it would be unreasonable to oblige him to lay aside all other business for the purpose of giving notice. In the language of a celebrated judge, “the holder of a bill is not omissis omnibus aliis “negotiis to devote himself to giving notice of its dishonour. “It is enough, if this be done with reasonable expedition. “If you limit a man to the fractional part of a day, it will “come to a question, how swiftly the notice can be conveyed; a man and a horse must be employed, and you will “have a race against time.” ,
But it is contended, that there is a difference between inland and foreign bills of exchange, in respect to the time when notice of their dishonour should be given; and it is-urged, that when the parties live in the same place, notice of the dishonour of a foreign bill of exchange ought to be given on the same day, though a different rale should prer vail with respect to inland bills. There is certainly no principle upon which such a distinction can be founded.. The law requires notice to be given, in both cases, in reasonable time; and it would be absurd to suppose, that what *266 was reasonable in one, was not equally so in the other, uní^r the same circumstance»
Haggin for appellant, WickliJJ# for appellee.
Upon the whole, we think there is no error in the record, and the judgment must, therefore, he affirmed with costs.